FILED

CV-16-K-8033-S

AO 243 (Rev. 01/15)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District  Alabama (Southern) | |
|---|---|---|
| Name *(under which you were convicted)*:  Christine Staggs McKim | | Docket or Case No.:  2:08-cr-00313-IPJ-RRA-2 |
| Place of Confinement:  FCi Aliceville | Prisoner No.:  27201-001 | |
| UNITED STATES OF AMERICA  Northern District (Southern) | V. | Movant *(include name under which convicted)*  Christine Staggs McKim |

### MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

   Northern District of Alabama
   Hugo Black Court house
   1729 5th Ave N
   Birmingham, AL   35203

   (b) Criminal docket or case number (if you know):  2:08-cr-00313-IPJ-RRA-2

2.  (a) Date of the judgment of conviction (if you know):  6-29-2009

   (b) Date of sentencing:  6-29-2009

3.  Length of sentence:  5,400 months

4.  Nature of crime (all counts):
   15 counts   18:2251(a) exploitation of children

5.  (a) What was your plea?  (Check one)

   (1) Not guilty ☐          (2) Guilty ☒          (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have?  (Check one)   Jury ☐   Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ☒

8.  Did you appeal from the judgment of conviction?   Yes ☐   No ☒

9.   If you did appeal, answer the following:

(a) Name of court:    ____N/A_____

(b) Docket or case number (if you know): _____

(c) Result: _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised:

(g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

(5) Grounds raised:

10.   Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

Yes ☐     No ☒

11.   If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐     No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: _____

    (2)  Docket of case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐     No ☐

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:     Yes ☐     No ☐

    (2)  Second petition:   Yes ☐     No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.    For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

AO 243 (Rev. 01/15)

**GROUND ONE:**  Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

see attached

Failure to communicate
Failure to negotiate a plea that benefit defendant
Failure to explain sentencing
Failure to investigate many aspects of the case

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

Ineffective Counsel. McKim was told that she could not appeal
which is a violation of her Constitutional Rights.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**   Ineffective Assistance of Counsel

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

```
Failure to investigate competancy
Education level
Failure to bring out sentencing errors
```

(b)  **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

```
Ineffective Assistance of Counsel. McKim was told that she could
not appeal which is a violation of her Constitutional Rights.
```

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☒

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

     Yes ☐     No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

     Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

     Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

---

**GROUND THREE:**   Cruel and Unusal Punishment

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

     Unconstitutional Sentence
     Mental Health
     PTSD
     Duress and Coercion

AO 243 (Rev. 01/15)

(b) **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

          Yes ☐      No ☒

    (2)  If you did not raise this issue in your direct appeal, explain why:

          `Ineffective Assistance of Counsel. McKim was told that she could not appeal which is a violation of her Constitutional Rights.`

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

          Yes ☐      No ☐

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

          Yes ☐      No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

          Yes ☐      No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

          Yes ☐      No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** Appeal Process

Ineffective Assistance of Counsel

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Failure to communicate for appeal

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

Ineffective Assistance of Counsel. Mckim was told that she could not appeal which is a violation of her Constitutional Rights

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

          Yes ☐     No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

          Yes ☐     No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

          Yes ☐     No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

    McKim has not filed any motions

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a)   At the preliminary hearing:

   James L. O'Kelley 2001 Park Place North Suite 259 Birmingham, Al3520

(b)   At the arraignment and plea:

   same

(c)   At the trial:

(d)   At sentencing:

   same

(e)   On appeal:

(f)   In any post-conviction proceeding:

(g)   On appeal from any ruling against you in a post-conviction proceeding:

16.   Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ☐          No ☒

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ☒

(a)   If so, give name and location of court that imposed the other sentence you will serve in the future:

(b)   Give the date the other sentence was imposed:

(c)   Give the length of the other sentence:

(d)   Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ☐          No ☐

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

   See Attached

TIMELINESS OF MOTION

McKim after being sentenced on June 29, 2009. She tried several
times to get intouch with her counsel to appeal her sentence. Counsel
was not available to her. McKim had an education level of the 8th
grade. She put in a motion for counsel on January 21, 2010, it was
denied on January 25th, 2010. This was well within the 1 year time
frame for her 2255. She did all she knew to do as far as her 2255.
McKim was told not to speak about her case to anyone for any reason
due to the type of crime it was. When she was denied counsel for her
2255, she knew nothing else to do.

Due to the excessive sentence that McKim was dealing with and the
PTSD from the high emotional abuse that she was subjected to she was
unable to seek help from anyone. Bouncing from foster home to foster
home along with dealing  with the abuse by those who were suppose to
protect her. McKim has been in Children's Hospital due to her
mental issues.  McKim also had several behavioral aides to help
her grow up but they always laberled her as a troubled kid and never
stayed long.  McKim was taken away from her mother at such a young
age that she never understood what was going on around her. Any
way of understanding her case and what her rights were slim to none.
McKim is also example of what the "system" is lacking. Justice failed
her as a child and even as a young woman. She might have been 22 years
old but her maturity level was that of a child.  McKim has never been
introuble. Her chances of being rehabilitated are good. McKim suffers
from Battered Womans Syndrome, PTSD,High Anxiety and more. Due to the
childhood trauma which went on until she was arrested. Due to McKim's
extreme sentence given to her, she didnt know how to deal with it.

But since she has been incarcerated she is just now at the maturity
level, emotional level and eduacatioanl level to assist in the
presentation of her case in an accurate and semi-professional
manner. With Mckim being incompetent at the time of her sentnce
and from the very beginning she was denied the right to counsel.
McKim also was told that she couldnt appeal since she plead guilty.
She was also not aware of how the law works she was only taking the
advice of her counsel.  The fact that she is asking for equittable
tolling should be decided on a case-by-case basis. Munchinski v
Wilson, 694 F.3d 308 (CA3 2012).

AO 243 (Rev. 01/15)                                                                                      Page 13

Therefore, movant asks that the Court grant the following relief:

_____

or any other relief to which movant may be entitled.


_____
Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on ___4-22-2016_____.
                                                                          (month, date, year)


Executed (signed) on ____4-22-16_____ (date)


                              _Christine McKim_____
                              Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

1.

United States

v                           case # 2:08-cr-00313-IPJ-RRA-2

McKim

ATTACHMENT TO MOTION 2255

Ground #1      Ineffective Assistance of Counsel

McKim's 6th Amendment Right was violated due to her lawyer's
failure to investigate her case thoroughly.  In order for her to
be presented correctly to the Court a full investigation should
have been done. Counsel must know all the facts before being able
to make professional decisions and informed choices. This can only
happen with proper investigation. McKim's counsel failed  to do anything
but have her sign a Plea Agreement.  Strickland v. Washington 466
US 688 80 L.Ed. 2d 674,104 S. Ct. 2052 (1984). Representation of
counsel entails certain basic duties. Counsels function is to assist
the defendant, and hence counsel owes a client a duty of loyalty.
Which counsel failed to do so. He failed to make a defense and a
investigation. Geders v. US 425 US 80, 96 S. Ct. 1330 (1976).
Counsel would have put in motions to gather her Departemnt of Human
Resource files and see the abuse she went through and her background.
Counsel would have seen the child she was. Counsel would have also
found that her co-defendant was arrested for threatening to kill her.
Counsel would have also found that her co-defendant has a violent
 background with previous felony charges.  If counsel would have
investigated and talked to the childrens doctor and seen that they
were unharmed, never raped and they were healthy. Counsel failed to
investigate McKims mental health. McKim was never given an evidentiary
hearing to her knowledge.

Counsel failed to communicate with McKim. She didnt understand
what was going on around her. Counsel failed to explain concurrent
and consecutive to her. Counsel never talked to McKim about a
lesser offense that she take. Wanatee v Ault 39 F Supp 2d 11643
(N.D. Iowa 1999). The ABA describes the obligation of defense counsel
in terms that no one could misunderstand in the circumstance. It is
the duty of the counsel to conduct a prompt investigation of all
circumstances of the case and to explore all avenues leading to
the facts relevant to the merits of the case. Counsel failed to do
so. Rompila v. Beard 545 US 374, 162 L Ed. 2d 360 125 S. Ct 2456(2005)
Mckim meets the Strickland's two prong test. McKim would not have
plead guilty intentionally and knowingly to 450 years. She was
mislead by her counsel. She was told that she would get 30 years
by her attorney. She would have gone to trial but because of the
misadvice of her counsel she took the plea. James v Cain 56 F. 3d
662 (CA 5 1995). Counsel failed to bring up the abuse in McKim's
childhood and the abuse she suffered while in the relationship
with the co-defendant. Maddox v Lord 818 F.2d 1058 (CA2 1987).
McKim primary arguments that here counsel unreasonably neglected
to investigate the affirmative defense of extreme emotional
disturbance. McKim's prior history would have shown that she
had been under extreme emotional and physical distress for many
years actually most of her life. This changes a person's way of
responding to situations. Deluca v Lord 77 F3d 578 (CA 2 1996)
The District Court granted the petition on the grounds that
Deluca's counsel in her state court trial was ineffective in two
respects: first, in failing to adequately investigate, prepare for

3.

advise DeLuca of a possible defense based on extreme emotional
disturbance ("EED"); and second, infailing to advise DeLuca that
it was up to her to decide whether to testify in her own defense.
Counsel knew about McKim's being hospitalized for mental problems
so that alone without all the other emotional abuse that happened
after this hositalization would most definatly be grounds for any
competent counsel to question McKim's situation. None of these
serious issues were even brought up in Court. Counsel's job to
provide McKim a clear understanding of the law was not even attempted.

Ground #2

McKim completed 8th grade only and during these years she was
bounced from foster home to foster home. Her emotional maturity
was even less than 8th grade level. Competent counsel would have
been able to recognize this just by speaking with McKim. She was
a "Child" - mentally- emotionally-and physically. At the time of
her arrest she was 5'2" and 70lbs. Non of these serious factors
were ever brought out.

Ground#3

Counsel failed to explain and weigh the difference in
concurrent and consecutive sentencing. This should have been
specified in the plea but it was not. Beavers v Lockhart 755 F.2d
657 (CA8 1985)Beavers argues that cousel failed to raise the issue
of consecutive sentencing. During the thorough review of the case
it was found that the trial judge did not run the sentences
consecutively on the consideration of character or habits or prior
record. This case was vacated and remanded for the consecutive

sentencing to be corrected and run concurrent.  McKim has NO PRIOR
RECORD. The fact that her sentence was run consecutive is a complete
miscarriage of justice and a violation of more than one Constitutial
Right. Counsel told McKim that she would get 30 years if she signed
the plea. Who in their right mind would sign a plea for 450 years?
It is obvious that she was mislead or did not understand what was
going on. Counsel should have also gotten her counts consolidated.
A District Judge must explain the appropriateness of any unusually
harsh sentence with sufficient justifaction. The judge should consider
all of 18 USSC 3553 (a) sentencing factors to determine whether
they support the sentemce given. He may not presume the guideline
range is reasonable. Gall v US 352 US 38 169 L.Ed. 2d.445, 128 S. Ct
586 (2007).  Abuse of discretion is shown in McKim's large sentence
due to FIRST TIME OFFENDER and non- career offender. Counsel failed
to argue that some counts were done on the same day not different days.
Prosecutorial misconduct was shown on McKim's case because they
withheld her mental and background history as evidence as well as
police reports on McKim's co-defendant. Brady v Maryland 397 US
753 (1970). Federal prosecutors are suppose to seek justice not
merely score convictions. McKims 8th Amendment was violated to
cruel and unusual punishment. McKim's sentencing is cruel and a
miscarriage of justice. Due to the duress McKim suffered by threats
and physical abuse by her codefendant she did not act of her own
free will. McKim was physically and emotionally hurt so severlly
that when co-defendant threatened to hurt her children, she believed
he would do it. She did whatever he told her to do, if not he would
beat her severly. Her co-defendant was arrested in Jessup, GA because

he threatened to kill her infront of a hotel clerk which called the
police. This and other records of the abuse were never brought in.
McKim was in fear for her life and the life of her children. Co-
defendant had made good on his promises to  hurt her all the time
so she knew he would do it. McKim was taken away from everyone she
knew. He saw a "child" even though she was 17 years old. Counsel
failed to let the court know and understand the fear he installed
in her. Counsel failed to file a motion for 5K2.12 for Coercion
and Duress. Battered woman syndrome is a set of psychological
and behaviorial reactions exhibited by victims of severe, long-term,
domestic physical and emotional abuse. Once battered women believe
themselves to be helpless victims of abusive men, they behave like
hostages and link themselves to the captors out of fear that is
the only way to survive.  Battered women are unable to respond
effectively to violence because they are psychologically trapped
in the violent relationship. Repeated beatings diminish the battered
woman's motivation to respond and instill in her a negative belief
about the effectiveness of her actions. This "learned helplessness"
keeps a battered woman from leaving her batterer. One of the primary
survival skills of battered women is hyperalertness. The Battered
woman learns to be sensitive to her enviroment to prevent further
violence to herself and her children. The development of survival
skills, however, comes "at the expense of escape skills" L. Walker
at 33 &87-89. Society often misinterprets the survival skills of a
battered woman as signs of passivity and weakness couples with an
unwillingness to leave the violent relationship. A common misunder-
standing is that the battered woman's responses are indicative of

6.

weak character. Rather, these reponses must be seen as attempts

to cope with the abusive and controlling enviroment in which she

lives and from which she is helpless to escape.  Model Penal Code

which recognizes duress as a defense if the threat of the use  of

unlawful force is such that a person of reasonable firmness in her

situation would have been  unable to resist. American Law Institute

Model Penal COde 2.09(i)(1985); see also Grant 691,F.2d at 1161-62,n3.

It is also said " by the continued use of unlawful force, persons

effectively breakdown the personality of the actor, rendering her

submissive to whatever suggestions they make. They then, using neither

nor threat of force on that occasion suggest that she perform a

criminal act;and the actor does what they suggest."  Our own law

recognizes that for a substantial period of time a brutal man may

subject women to severe psycholgical stress such that they "fail .

to escape or cry out for help when in a public place because they

lacked sufficient ego strength, self-confidence and will power when

they were in the threatening shadow of the man's complete domination

over them." United States v Winters, 729 F.2d 602, 605(9thCir. 1984)

It was the government in Winters that relied on a psychiatrist's

testimony to amke this point. In other contexts, too, we have recognized

the "pattern, all too familiar, of a victim identifying with the

aggressor under conditions of terror." Lazo-Majano v INS, 813 F.2d

1432, 1434(9th Cir 1987). Accordingly, what is required is for the

fact-finder to determine whether, given the experience and psycholgical

make-up of this defendant, she feared to leave and oberyed from fear

the criminal who directed her conduct. McKim was given a psychological

evaluation on March 6 2009 which was three years after being arrested

and taken out of the abusive situation that she was in.

United States v. Bailey, 444 US 394, 409-10, 100 S. Ct. 624, 634,
62 L. Ed. 2d 575 (1980)  Under this defense, otherwise criminal
behavior may be excused under narrow circumstances. To succeed
with this defense, the defendant must show:  That the defendant was
under an unlawful and present, imminent, and impending threat of
such a nature as to induce a well-grounded apprehension of death
or serious bodily injury; 2. that the defendant had not recklessly
or negliently placed herself in a situation in which it was probable
that she would be forced  to choose the criminal conduct; 3. that
the defendant had no reasonable legal alternative to violating the
law; a chance both to refuse to do the criminal act and also to
avoid the threatened harm, and 4. that a direct casual relationship
may be reasonably anticipated between the criminal action taken
and the avoidance of the threatened harm. United States v. Liu
960 F.2d 449, 453 (5th Cir). McKim was in fear for her life and the
life of her children from the past and present trauma and abuse.
At 17 years old when she got with the 35 year old man she hadno
idea that he would be so abusive and cruel. She did not negligently
or rechklessly put herself in any situation. She was a child herself.
McKim did not have the mental, emotional, or physical way to get
away from this evil man. McKim's counsel failed completely in
showing the court any of the true facts of the case. Model Penal
Code 2.09 "Stark, tangible factors that were differentiated the actor
from another, like her size, strength, age, or health, would be
considered in making the exculpatory judgement". The fact that she
was 5' 2" and 70lbs along with a Heroin/ Cocaine addict, that was
supplied by co-defendant, should have been considered. Moreover,
a purely subjective element that cannot be taken into account in

8

sentencing. Federally, the Sentencing Guidlines specifically provide

for the possibility of downward departure "committed the offense

because of serious coercion, blackmail,or duress, under circumstnces

not amounting to a complete defense". USSG 5k2.12. The Commission's

Policy Statement on this guideline declares: " The extent of the

decrease ordinarily should depend on the reasonableness of the

defendants actions and on the extent to which the conduct would have

been less harmful under the circumstances as the defendant believed

them to be." The perception of the particular defendant thus must be

taken into account.

Ground #4  Appeal Process

McKim made an attempt to have her counsel file an appeal but

he would not answer the phone. The excessive unconstitutional

sentence that was given to McKim and an appeal should have been

entered.  Effective Counsel, which is a constitutional right, on

such a huge sentence would have recognized the fact that McKim was

not competent to amke any decisions including giving up her rights

in a plea. The fact that  she gave up any rights and still recieved

a Life sentnece of 450 years shows Ineffective Assistance of Counsel.

LIST OF CASES OF VERY SIMILAR NATURE

This shows the huge sentence disparity on McKims case.

Also attached is a letter from McKim in her own words
which explain her history and some onf the abuse.

CASES OF SIMILAR NATURE

* <u>United States v Julie Carr-</u> 09-CR-193 (D. Me.  2011)
  (female defendant convicted of sexual exploitation of  child;
  defendant transmitted four webcam videos of two- year- old
  daughter being abused to man and received child pornography
  from man; sentenced to 240 months imprisonment despite claim
  of dependent personality disoder and man had " conned"  defendant);

* <u>United States v Laura Shoulders</u> - 14- CR- 8 (W. D. Okla 2014)
  ( female defendant convicted of sexual exploitation of child;
  defendant used her cellular telephone to take three sexually-
  explicit videos of one - year- old girl sent them via text
  message to a man; sentenced to 324 months imprisonment  despite
  calim that man " conviced" defendant to do it and defendant
  took videos at man's request);

* <u>United States v Jennifer Mahoney</u> - 12- CR- 319 (D.N.J 2012)
  ( female defendant convicted of sexual exploitation of a child;
  defendant used her cellular telephone to take and email video
of her sexually exploiting a five - year- old child in her care
  and also live- stream video to man; sentenced to 360 months
  imprisonment);

* <u>United States v Holli Chapman</u> - 11- CR - 282 ( N. D. Tex2012)
  ( female defendant convicted of sexual exploitation of a child;
  defendant used her cellular telephone to take two sexually
  explicit photographs of her six - year- old daughter being
  sexually abused and sent the photographs via text message to
  a man; sentenced to 360 months imprisonment);

* United States v Andrea Mast - 11CR- 37 (W. D. Mich. 2012)

* United States v Andrea Mast - 11-CR-37 (W.D. Mich. 2012)
  ( female defendant convicted of sexual exploitation of a child;
  defendant took sexually explicit  pictures of seven- year- old
  girl and sent them via email to a man; senteced to 360 months
  imprisonment);

* United States v Mellissa Loman - 13-CR-35 (W.D. Okla. 2013)
  ( female defendant convicted of sexual exploitation of a child;
  used her cellular telephone to take nineteen sexually- explicit
  videos of a minor and sent them via text message to a man in
  exchange for financial benfits; senteced to 360 months imprisonment);

* United States v Adleta, No. 13-CR-74 (M. D.  Fla, 2013), aff'd 2014
  WL 3882497 (11th Cir. Aug 8 2014) (female defendant convicted of
  two counts of sexual exploitation of child; defendant transmitted
  sexually explicit photographs and video of her three-year-old
  daughter and two-year-old son and sent them via email, text message,
  and Skype to a man in North Carolina; defendant licked her daughters
  vagina two or three times; sentenced to 54 years imprisonment).

* United States v Rhonda Michelle Fee, No. 11-15356, Appeal Northern
  District of Alabama, 7:09-cr-00029-LSC-HGD-2, United States v. Fee
  425 Fed. Appx. 847, 2011, US App LEXIS 8854 (11th Cir Ala).
  Fee was convicted of 8 counts of sexually explicit child pronography
  1 count possession.  Fee and Co-defendant had video camera set up
  in the restroom of child and in her bedroom. Both camera's downloaded
  to the Fee's bedroom. Found at the Fee's home was also 8 polaroid's
  of shild'd genitalia. Rhonda used her hands to hold child's genitalia
  while photo's were taken. Sentenced to 8 CONCURRENT terms of imprisonment
  one 120 month to run CONCURRENT ALSO.

\*   <u>United States v Solomon-Eaton-</u> 12-CR-352 ( New York) ( female defendant convicted of 13 counts of exploitation of child;  defendant used her cellular telephone to take sexually- explicit photographs of her two- year- old daughter photographs include minor daughter with a dildo sent photographs to man via text message; senteced to 17 years).

To Whom It May Concern:

Hello my name is Christine Mitham #27201-001
I am currently incarcerated at the Federal Correctional Institution in
Aliceville, Alabama. Here is my story.

I was born on May 21, 1984. I was placed in foster care
due to the sexual, physical and emotional abuse I went through as a
child I bounced from home to home near Tiboyar, Iowa. I had
visits with my mother but don't remember them all. I remember
lots of my childhood my complete memory was when I went to
a group home in Tiskilwa. I was about 4yrs old when I was placed
there. It was already labeled a "trouble child" I had visits with
my brother while I was there and thats when my brother sexual
abused me. I told my mother and she didn't believe me. I remember
my brother saying he never watched a girl pee and walked in when
I was. I told him to get out but he didn't. I went to the chair
I was watching T.V on and he came over there and started
touching me. I got up and went to my mothers room and she
told me to go back to bed. I went back to the chair and I
asked my brother why me. He told me that my older sister could
get pregnant and my little sister would tell. I told him and you think
I won't. He said no because I was his sister luck and I looked up to
him like that I didn't want to go back and see my mother
because I didn't want to be around him. But I went back and
my step grandfather started to touch me and I ran to my
mother and told her that I wanted to go back to the group home.
She asked why and I told her and she said I was a liar. When
I went back I told. I remember a foster home in Ashville

that we were cet. They abused us when we did Something wrong
they threw shoes at us i remember. my brother threw their cat
on the beginning pool and said I did it. So the foster mother threw
me in the pool and won't let me out. I would wet the bed and they
would make me sleep in it. So I would put the covers in my closet. So
they wouldn't know. My step grandfather was also messing with
the hand cup girl next door. The foster home was going to adopt
us but changed their minds because they said they would adopt
my brother and sisters but not me. That's when we went to Ridges.
I went to counseling and it was hard for me to talk. So I just
Sat there. I finally did start talking. I was fighting in school
and in the group home. I ran away several times. I was then
assigned a behavioral aide. I then got a Sponsor and went over
there on the weekends and they were going to adopt me but it didn't
work either. I went to a childrens hospital on the mental floor
Because I called DHR to remove me from a foster home. I
Stayed there for about 6 months. I met my husband when I
was 13yrs old. I got pregnant with my oldest Son. I had a
drug habit. I started doing heroin and cocaine. I got married
So DHR wouldn't take my Son. They kept my Son in the hospital
until I went to court. I had my daughter at 14yrs old. She was
born early. My habit was high and I dropped out of School
at 14yrs old I left my family because I couldn't get Sober and
I didn't know what a family was. I met my co defendant at
17yrs old he was 38yrs old. I looked like I was 13yrs old. He
told me he was in prison but I didn't think to check why. He
turned abusive fast. He choked me because I told him I didn't
want Sex. That's when he told me if I ever told him no again

my body went over he found he would pimp me out and say
I was his for him to do what he wanted. If I didn't do
what he would beat me or give me drugs and when I would
be withdrawing from them he would laugh until I did what he
wanted. I was using just to numb his blows. I got pregnant
with my youngest son and he wanted me to fix him something
to eat I said no and thats when he tied me up and put me
in the closet for 3days and gave me bread and water only.
He was so abusive every time he came home I was scared of
him. He was arrested for Domestic Terrorist Threats, in Texas. Cuz
he said the only way I was leaving him was in a body bag or without
his son. I had case called the police when he grabbed me by the
neck because I wasn't eating due to the fact I was pregnant I had
my son in my womb. A report was made but he wasn't arrested.
I left him but when I did he would find me and threaten to
kill me. So I went back. When my daughter was born the abuse
got worse. He would threaten to harm my children I was
deathly scared of him because I knew he would make good on
his threats. I got arrested at the age of 20yrs old on 15
counts of production of Child pornography. On the cameras there
was pictures where he was abusive to me and where I was
scared of him. Im scared to be around men, loud noises and
I can't even watch things on t.v. I have nightmares from all
the abuse I went through in my life.

                      Thank you
                      Christine M°Clim Anderson

United States of America,

v.

Christine Staggs McKim


As a first time offender, at the age of 22, when she was arrested. Ms. McKim was sentenced to 450 years for a crime that others are being sentenced to 30 years or less today. (see attached cases of similar nature that received a substantially less sentence.) Ms. McKim has been sentenced to 15 counts all running consecutively which is only found in repeat offenders not a first time offender. Ms. McKim's sentence also does not portray the true circumstances of the crime. She had very poor representation for which she did not have the knowledge and understanding to know this at the time of sentencing and for many years later. Ms. McKim had an 8th grade education along with many mental health issues due to the severe childhood trauma which continued until she was arrested. (attached is a letter written by McKim with details about her childhood and time until she was arrested.) The Court was never presented with the actual history nor all the circumstances surrounding this case. The fear and learned helplessness that was derived from a lifetime of abuse made her mentally incompetent to do anything other than take orders from a man. McKim's co-defendent was so cruel of a man that she stayed scared for her life and her childrens lives. All she knew todo was what he told her to do.  McKim was a victim of Battered Woman Syndrome.

Battered Woman Syndrome is a set of psychological and behavior reactions exhibited by victims of severe long term, domestic physical and emotional abuse- L. Walker, The Battered Woman Syndrome (1984). Battered Woman Syndrome is not a mental disease or a defect; rather, battered woman syndrome is a post- traumatic stress disorder. Its psychological effects are often similiar to the effects of imprisonment on kidnap victims and prisoners of war. Once battered women belive themselves to be helpless victims of abusive men, they behave like hostages and link themselves to their captors out of fear that it is the only way to survive. Battered Women are unable to respond effectively to violence because they are psychologically trapped in the violent relationship. Repeated beatings diminish the battered Woman's motivation to respond and instill in her a negative belief about the effectiveness of her actions. This "learned helplessness" keeps the battered woman from leaving her batterer. It is the task of the sentencing court to determine the credibility and weight of these issues but McKim's attorney did not present any of these issues. Futhermore, there are police reports and Department of Correction files on her co- defendant to prove how cruel of a human that he is. Our own law recognizes that for a substantial period of time a brutal man may subject women to severe psychological stress such that they "fail to excape or cry out for help  when in public place because they lacked sufficient egostrength, self- confidnce and will power when they were in the shadow of the mans complete domination over them"

United States v Winters, 729 f2d 602, 605 (9th Cir 1984)
If the Court would have had knowledge of the severe trauma
that McKim has had her entire life the outcome of her
sentencing would have been different.

Due to the extreme sentence that McKim had been given
shedid not know how to handle it. She acted out in anger
until she was able to get help for the first time in her
life to process her emotions and start working toward
positive life skills. She has accomplished many things
while being incarcerated to become a productive member of
society. She  has received her GED and started college
courses. McKim has also taken many classes on trauma and
anger ( See attached). She is just now has the maturity,
emotional and educational level to assit with the presen
presentation of her case. In an accurate and semi professional
manner.

From: Janet Byrd, Psy.D., Resolve Program Coordinator, FCI Aliceville

January 7, 2016

Subject: Inmate McKim, Christine #27201-001

This letter is to inform you that inmate McKim, Christine #27201-001, is currently participating in the Resolve Program at the Federal Correctional Institution in Aliceville, Alabama. The Resolve Program is a voluntary non-residential trauma treatment program which focuses on helping female inmates, who have been victims of traumatic experiences to learn to cope with the past traumas in order to move beyond it and live a life free of criminal activity, violence and substance abuse. It also emphasizes the importance of building a healthy support community, and assists inmates in managing mental health and/or substance abuse problems. It takes a minimum of nine months to complete the program.

Inmate McKim has participated in the program with no issues and has appears to demonstrate an active commitment to learning the skills she needs in order to think rationally and make better choices in her future. She has been a consistent participant in all facets of the program, which includes a psycho-educational group she completed at FCI Tallahassee and therapy groups based on treatment modalities which have been shown to be evidence-based practices. She appears to have been making positive strides in her effort to internalize the Resolve Program's philosophy.

In addition, since inmate McKim's incarceration in the BOP in 2009, she has actively sought psychological counseling to address both her trauma issues, as well as her own criminal behaviors, which has been well documented. This letter is meant for the sole purpose of advising as to her efforts in addressing psychological issues.

If you have any questions about inmate McKim's efforts, please feel free to contact me at (205) 373-5195.

# Bureau of Prisons
# Psychology Services
# Resolve Program

**SENSITIVE BUT UNCLASSIFIED**

| | | | |
|---|---|---|---|
| **Inmate Name:** MCKIM, CHRISTINE STAGGS | | | **Reg #:** 27201-001 |
| **Date of Birth:** 05/21/1984 | **Sex:** F | **Race:** WHITE | **Facility:** ALI |
| **Open Date:** 12/09/2015 | **Closed Date:** | **Status:** Active | **Discussed:** Yes |

**PGI Title:** Phase II: Dialectical Behavior Therapy

**Status:** Active          **Last Updated:** 12/09/2015     **Last Provider:** Byrd, Janet PsyD

**Problem:** The inmate has a diagnosis of Borderline Personality Disorder or associated features as demonstrated by

**Goal:** Decrease behaviors that threaten life, interfere with therapy, and decrease quality of life while increasing skills that replace ineffective coping behaviors

**Interventions:** - Attend all scheduled group sessions & complete all assignments
- Demonstrate mindfulness
- Demonstrate distress tolerance and regulate emotions
- Practice interpersonal effectiveness
- Demonstrate self-management

**Progress Notes:**

Displays Conceptual Understanding Only          **Date:** 01/04/2016  **Provider:** Byrd, Janet PsyD

Inmate MCKIM has been a fair participant in the Dialectical Behavioral Therapy (DBT) group of Phase II up to the present time, which was expected due to the fact she joined into a group of people who had participated in Phase I together. She verbalizes a desire to learn how to stop engaging in self-destructive behaviors, such as self-mutilation and avoidance as a means of dealing with uncomfortable emotional situations. She has verbalized a desire to self-improve and be able to have more stable interpersonal relationships and effectively manage her anxiety. Her anxiety appears to be due to issues related to abuses, which occurred during her childhood. As a result, she tends to manifest her anxiety through emotional detachment symptoms and anger, which has hindered her ability to interact rationally in her relationships, as well as not run from a relationship when even minor issues arise.

She has been in attendance and appears highly invested in self-improvement and the treatment process. She has been trying to be a supportive group participant. She has expressed her desire to work with the Resolve Program Coordinator in trying to understand the connection between her traumatic experiences and her mental illness/substance abuse in her effort to ensure she is able to cope with future experiences without engaging in further self-destructive behaviors. Her continued participation in DBT should assist in these areas.

**SENSITIVE BUT UNCLASSIFIED**



# Federal Bureau of Prisons
# Psychology Data System

**Date-Title:** 12-20-2013 - Clinical Intervention - Treatment Plan

**Reg Number-Name:** 27201-001 - MCKIM, CHRISTINE S.

**Author:** TARA MEISNER, M.A., PSYCHLGY PREDOCTORAL INTERN

**Institution:** TAL - TALLAHASSEE FCI

---

## Diagnostic Impressions:

**AXIS I:** Posttraumatic Stress Disorder - Chronic without Delayed Onset


**AXIS II:** None

## Treatment Plan:

Problem: Inmate McKim (27201-001) requested time in the Personal Growth Room to help with managing emotions.

Below are the Inmate's goals:

"To deal with and overcome stress, guilt and denial."

"To learn how to effectively communicate."

"To learn how to be assertive."

Interventions: Inmate McKim will spend six 60 minute sessions in the Personal Growth Room. She has selected the following materials to help her accomplish her stated goals:

1. Resolving Your Past (EM30-AT)
2. How to Handle Conflict and Confrontation (CO03)
3. Understanding Anxiety and Worry (ESI08)
4. Understanding Guilt (ESI11)
5. Self-Discipline and Emotional Control Vol 1(ESI19)
6. Courage to Heal (EM37-AT)

## Termination Summary: (02-26-2014)

Inmate McKim attended all 6 of her scheduled sessions in the Relaxation Room. She reported that she enjoyed her time in the room and will continue to work on issues related to anxiety during individual therapy.

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**



# Federal Bureau of Prisons
# Psychology Data System

**Date-Title:** 08-20-2009 - Intake Screening
**Reg Number-Name:** 27201-001 - MCKIM, CHRISTINE S.
**Author:** MICHAEL T. PLASAY, CH PSYCH
**Institution:** TAL - TALLAHASSEE FCI

---

## TREATMENT/MENTAL HEALTH HISTORY:

Inmate **MCKIM** reported the following:

**In-Patient:** age 13: homicidal/suicidal thoughts, 6 months.

**Out-Patient:** Counseling off and on since age 4.

**Suicide Attempt:** 8 attempts: each time attempted OD. First age 14, last time, age 21.

## ABUSE HISTORY:

Inmate MCKIM reported the following:

**Sexual Abuse:** step father when 2.
brother when 9-13, pretty much every dayover years
step grandfather at 13 couple of times
boyfriend in last six years multiple times.

**Physical Abuse:** see above
foster parents

## MENTAL STATUS:

During the screening interview no mental status items were noteworthy.

Her psychological stability for custody is judged to be **FAVORABLE** .

## DRUG ABUSE HISTORY:

Inmate MCKIM reports a history of substance abuse.   Her primary drug of addiction/abuse is
**POLYSUBTANCE ABUSE** . She is interested in drug abuse treatment.

## PROGRAM TREATMENT RECOMMENDATIONS:

No programs/treatment are recommended at this time.

Inmate MCKIM reported an interest in participating in programs/treatment.

## COMMENTS:

Inmate is a 25 year old white female serving a 450 year sentence for production of child pornography. She

was advised verbally of the limits of confidentiality. There is no indication of prior offenses.  She indicated she is divorced with four children, ages 9, 8,  4, and 3.  She anticipates regular written contact with her father, who is also incarcerated.

She reported at age 13 being hospitalized for six months for having homicidal/suicidal thoughts.  She could not remember the diagnosis at the time.  She does recall that she was initially placed on zoloft for three months before she was hospitalized.  She reported outpatient counseling off and on since the age of 4, and was initially sent to counseling because she had "issues with being touched by people."

She reported 8 prior suicide attempts beginning at age 14 and ending at age 21.  Each time was described as an unsuccessful od on tylenol.  Usually, the event involved doing it in front of someone, or calling her boyfriend, or having someone walk in on her after being passed out.  Only one resulted in a trip to the ER.

She reported being a victim of sexual abuse/assault.  Please read additional noted for details.

She reported using a number of substances.  She began using heroin at age 14.  Her preferred method is injection, and reported a daily use beginning by age 15 to the time of incarceration.  She reported similar history for cocaine, mixing the two together and using on daily basis.  She began using methamphetamine at age 19.  She reported a 3-4 time a month habit.  She reported a history of using xanax and klonopins beginning at age 20 on a daily basis (unprescribed).   She denied any history of serious head injury or current physical health problems.

Inmate interested in multiple programs, including counseling, drug rehab, and trauma.  She was instructed on how to contact psychology services in the future routinely, as well as, in the event that she began to feel in crisis.

**SENSITIVE BUT UNCLASSIFIED**